UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 9:20-cv-82165

VEHICLE MAINTENANCE PROGRAM, INC.,

        Plaintiff,

v.

TRAFFIC TECH INTERNATIONAL, INC.,
8873780 CANADA INC. d/b/a HARMONY
JUVENILE PRODUCTS,
CONTINENTAL CASUALTY COMPANY
d/b/a CNA CANADA, and JOHN DOES

        Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, VEHICLE MAINTENANCE PROGRAM, INC., by and through its attorneys, Spector Rubin, P.A., and files its Complaint against the Defendants, TRAFFIC TECH INTERNATIONAL, INC., 8873780 CANADA INC. d/b/a HARMONY JUVENILE PRODUCTS, and CONTINENTAL CASUALTY COMPANY d/b/a CONTINENTAL CANADA and states as follows:

### JURISDICTION AND VENUE

1. At all material times, Plaintiff, Vehicle Maintenance Program, Inc. (hereinafter "VMP") was and is a Florida corporation with its principal place of business in Palm Beach County, Florida.

2. At all material times, Defendant Traffic Tech International, Inc. (hereinafter "TT") was and is, upon information and belief, a Canadian corporation located in Quebec, Canada.

3. At all material times, Defendant, 8873780 CANADA INC. is, upon information and belief, a Canadian corporation located in Quebec, Canada and has at all times been doing business as HARMONY JUVENILE PRODUCTS (hereinafter "HARMONY").

4. Upon information and belief, HARMONY may control, operate and utilize multiple entities which operate as HARMONY JUVENILE PRODUCTS, which entities are unknown at this time.

5. At all material times, Defendant, CONTINENTAL CASUALTY COMPANY d/b/a CONTINENTAL Canada (hereinafter "CONTINENTAL"), is an Illinois corporation with its principal place of business in Chicago, Illinois and maintains offices in Toronto, Canada.

6. This Court has jurisdiction based upon 28 U.S.C § 1332, as it is an action between citizens of different states and/or between citizens of a State and citizens of a foreign State and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants. Defendants TT and CONTINENTAL at all material times carried out business ventures in this State and/or maintained offices or agencies in this State. Defendants breached contracts in this State by failing to perform acts required by the contract to be performed in this State. Defendants CONTINENTAL and TT contracted to insure Plaintiff and/or Plaintiff's property in this State at the time of contracting.

8. Venue is appropriate in this district as a substantial part of the events or omissions giving rise to the claim occurred in this venue and defendants are subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

9. In or about March and April 2020, VMP engaged in extensive discussions with HARMONY regarding the purchase of N-95 and medical masks.

10. During the course of the discussions, VMP advised HARMONY, and HARMONY was well aware, that VMP had multiple orders to fulfill for the re-sale of the masks.

11. As a result of these discussions, purchased two shipments of masks from HARMONY in April 2020.

12. HARMONY issued multiple invoices to VMP for the masks as well as payment instructions.

13. In total, VMP paid $564,750.00 to HARMONY via direct wire to HARMONY's bank account.

14. To arrange for the transportation, HARMONY contacted its logistics service provider, TT, and instructed VMP to retain TT for the transportation arrangements because that was HARMONY's designated service provider and had a relationship with HARMONY's factory.

15. At all times, HARMONY referred to the factory in China as "their factory" and had direct relationship with their factory.

16. HARMONY confirmed to VMP that TT had offices in China where the masks were located and expertise in the exportation and transportation of same.

17. Based upon HARMONY's representations, VMP retained TT to transport the masks from the HARMONY's factory in China to VMP in Boca Raton, Florida.

18. At all material times, however, HARMONY was coordinating with TT and provided all instructions to TT for the services.

19. TT transported or arranged to transport the masks from HARMONY's factory to the airport in Ningbao, China where same was to be loaded aboard an aircraft for transport to Miami, Florida on or about April 19, 2020.

20. However, once the shipment reached the airport, it was purportedly stopped by Customs in China.

21. Plaintiff alleges that the shipment was "purportedly" stopped since it has never received any evidence other that TT's word that same was stopped.

22. Thereafter, VMP attempted to obtain information from TT and HARMONY as to the purported Customs delay and status as to when the shipment will be transported.

23. However, TT would not provide timely status updates or advise VMP and to either the cause of the delay or the status of delivery. VMP had to make several requests to TT before any information was provided.

24. Finally, on May 3, 2020, TT finally explained that the shipment could not be exported because of congestion and staffing issues.

25. On May 4, 2020, TT advised VMP that their "office in China is well-respected and we know about all of the laws and regulations. In fact, we even helped the supplier make sure all of their paperwork was in order and repackaged."

26. On May 22, 2020, TT finally advised that the shipments were still being held by Customs and they were waiting for the release order.

27. On May 26, 2020, TT advised that they hoped the issue would be resolved by the end of the week.

28. On June 3, 2020, having not heard anything further, VMP asked TT for status.

29. TT responded the next day, confirming that the products were not compliant with Chinese Customs rules.

30. Arrangements were the purportedly made between TT and HARMONY to have the shipment transported back to HARMONY's factory.

31. No notations were made by the factory as to any damages to the shipment. In fact, TT provided "proof" of delivery in good condition purportedly signed by the factory dated June 11, 2020.

32. Thereafter, on June 18, 2020, TT provided a "Damage Declaration" document purportedly from HARMONY's factory stating that the cartons and the products inside same arrived damaged at the factory on June 11, 2020.

33. Thereafter, TT and HARMONY engaged in discussions regarding the re-boxing and re-labeling of the products for export.

34. However, to this date, VMP has never received the products at all.

35. VMP has never received – nor been offered – any refund, partial or full, from HARMONY.

36. Furthermore, as part of the services to be provided by TT, TT was to obtain insurance for the products covering damage and loss, plus transportation.

37. In the course of the discussions regarding the transportation, TT made multiple representations to HARMONY and VMP that TT had obtained insurance for the products – on a door-to-door basis, covering 110% of the invoice value, plus freight. TT confirmed this coverage in writing.

38. However, when TT reported that the products were purportedly damaged, HARMONY inquired as to whether an insurance claim would be filed.

39. TT responded that the claim would need to be directed against the trucker who transported the products and/or the warehouse which stored the goods at the airport.

40. Thereafter, VMP notified TT that it was holding TT responsible for the damages and to confirm that an insurance claim was filed with the insurer on behalf of VMP.

41. VMP asked TT to confirm that a claim had been submitted to the insurer. VMP also requested the contact information for the insurer and a copy of the policy. However, for whatever reason, despite multiple requests, TT outright refused to provide this information or indeed respond at all.

42. Instead, VMP, on its own, discovered that CONTINENTAL was the actual insurer.

43. Thereafter, VMP contacted CONTINENTAL to inquire as to the policy and to make a claim.

44. CONTINENTAL responded on July 20, 2020, advising that no prior claim was filed for this shipment. CONTINENTAL asked a number of questions regarding the circumstances of the claim, despite all such information having already been provided to it by VMP. CONTINENTAL further also refused to provide a copy of the policy, and instead directed VMP to obtain same from TT.

45. In good faith, VMP immediately responded, reiterating the same information which had already been provided, and again requesting a copy of the policy.

46. In response, CONTINENTAL responded – confirming that this was a CONTINENTAL Canada policy and that the cargo was, in fact, insured.

47. CONTINENTAL also requested details as to the location of the shipment and a contact person. VMP had already requested this information from TT, but TT refused to provide

same. VMP therefore directed CONTINENTAL to request this information from its agent who procured the insurance, TT.

48. Eventually, after several additional communications and delay, TT provided the information to CONTINENTAL so that a survey of the damage could take place.

49. Thereafter, CONTINENTAL and VMP engaged in discussions regarding the insurance claim. Ultimately, CONTINENTAL agreed to settle the claims for $414,475.00.

50. VMP accepted the offer because CONTINENTAL provided its explanation of the coverage for this loss.

51. Thereafter, CONTINENTAL issued a coverage denial letter, stating that no coverage had ever been obtained for the shipment even though VMP had agreed to accept $414,475.00 as a resolution of the claim.

52. This lawsuit followed.

53. All conditions precedent have been met or waived.

## COUNT I – BREACH OF SETTLEMENT AGREEMENT - CONTINENTAL

54. Plaintiff reasserts and realleges the allegations set forth in paragraphs 1 through 53.

55. CONTINENTAL and plaintiff entered into an agreement whereby CONTINENTAL agreed to pay $414,475.00 in settlement of the insurance claim brought by plaintiff.

56. Plaintiff accepted the offer, thereby creating a written agreement between the parties.

57. Thereafter, CONTINENTAL breached the agreement by denying that coverage existed and refusing to honor its agreement to pay as it agreed to do.

58. As a result of the breach, plaintiff has been damaged in the amount of $414,475.00, plus the costs and expenses of bringing this lawsuit.

59. Since agreement was for an insurance settlement which was breached by CONTINENTAL, VMP is entitled to attorney's fees pursuant to Fla. Stat. § 627.428.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against CONTINENTAL in the amount of $414,475.00, together with prejudgment interest, costs, attorney fees and other and further relief as this Court deems just and proper.

### COUNT II – BREACH OF INSURANCE AGREEMENT – CONTINENTAL[1]

60. Plaintiff reasserts and realleges the allegations set forth in paragraphs 1 through 53.
61. In the alternative, CONTINENTAL executed a policy of insurance in favor of VMP covering 110% of the invoice value of the shipment, plus freight.
62. CONTINENTAL confirmed in writing that the policy was issued and coverage was afforded for the subject shipment.
63. However, CONTINENTAL denied coverage and refused to pay VMP for the insured loss.
64. Such denial constitutes a breach of the parties' agreement.
65. As a result of the breach, plaintiff has been damaged in the amount of $621,225.00, plus the costs and expenses of bringing this lawsuit.
66. Since agreement was for an insurance policy which was breached by CONTINENTAL, VMP is entitled to attorney's fees pursuant to Fla. Stat. § 627.428.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against CONTINENTAL in the amount of $621,225.00, together with prejudgment interest, costs, fees, and other and further relief as this Court deems just and proper.

---

[1] It is noted that a claim for bad faith against CONTINTENTAL is being filed contemporaneously with the instant complaint. Plaintiff intends to amend its complaint to assert bad faith claims after the requisite notice period has expired.

## COUNT III – UNFAIR AND DECEPTIVE TRADE PRACTICE

## FLA. STAT § 501.202 et seq - CONTINENTAL

67. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

68. CONTINENTAL allows its unlicensed agent, TT, to place and confirm insurance coverage under TT's open cargo insurance policy with CONTINENTAL with TT's customers.

69. CONTINENTAL's agent, TT, placed and confirmed to VMP that it had placed insurance coverage over the subject shipments and that the shipments were insured.

70. CONTINENTAL's agent, TT, represented to VMP that an insurance claim had been filed on their behalf.

71. This turned out to be a lie.

72. VMP then filed a claim for loss under the policy.

73. VMP asked for a copy of the policy, but CONTINENTAL initially refused.

74. On July 21, 2020, Federico Rossi of CONTINENTAL confirmed that the cargo was insured under the CONTINENTAL Canada policy.

75. Further, on September 1, 2020, Federico Rossi of CONTINENTAL confirmed in writing that CONTINENTAL insures the owner of the cargo at the time of the loss.

76. Thereafter, CONTINENTAL offered to settle the insurance claim for $414,475.00.

77. VMP accepted this offer.

78. However, CONTINENTAL then denied coverage for the claim – stating that no insurance was in place for the subject cargo.

79. Further, it became apparent during these discussions that CONTINENTAL was discussing the claim with TT.

80. It also became apparent that CONTINENTAL was protecting the interests of TT, rather than its insured.

81. Such acts and actions by CONTINENTAL constitute unfair and/or deceptive trade practices under Florida law.

82. As a direct and proximate result of such misrepresentations, VMP was injured.

83. Under Florida Statute § 501.202, VMP is entitled to damages and an award of attorney's fees as a result of CONTINENTAL's deceptive and unfair conduct.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against CONTINENTAL for damages, together with prejudgment interest, costs, fees, and other and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT - HARMONY

84. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

85. VMP and HARMONY entered into an agreement whereby VMP purchased the subject shipment from HARMONY in exchange for the payment of $564,750.00.

86. VMP timely made payment to HARMONY.

87. However, HARMONY has failed to provide or deliver any of the products to VMP.

88. As a result of this breach by HARMONY, VMP has incurred substantial damages, including the loss of the goods paid for, lost sales and profits, loss of good will, and attorney's fees and costs.

89. At all times, HARMONY was well aware that VMP had purchase orders in place for the sale of the products and needed to deliver same in a timely manner.

90. As a result of the delay (and ultimately utter failure to deliver) VMP lost all opportunity to sell the products or obtain replacement products.

91. Further, upon information and belief, HARMONY may control, operate and utilize multiple entities which operate as HARMONY JUVENILE PRODUCTS, which entities are unknown at this time and have been named as JOHN DOES 1-10.

92. To the extent that any of these entities either performed services, entered into agreements with VMP or received and/or retained any monies paid by VMP as set forth herein, such entities shall be joined in this litigation as defendants and be responsible for any judgment entered against HARMONY.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against HARMONY for damages, together with prejudgment interest, costs, fees and other and further relief as this Court deems just and proper.

## COUNT V – NEGLIGENCE - TT

93. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

94. At all times, TT had a duty to VMP to ensure the safe transportation and delivery of the subject shipment the factory to final destination.

95. TT further had a duty to ensure that the products were properly packaged, prepared and cleared Customs for export.

96. TT represented to VMP that it had expertise with respect to Chinese Customs regulations regarding the products.

97. TT breached these duties by failing to deliver the products safely to destination and failing to clear the products through Chinese Customs.

98. Specifically, and without limitation, TT failed to: (a) retain a reputable inland carrier to transport the products to the airport; (b) prepare and/or present the correct documentation to Chinse Customs in order to export the products; (c) to have the appropriate knowledge

11

of Chinese export regulation relating to the product to enable their exportation; (d) to facilitate the clearance of the products through Chinse Customs in a timely manner; (e) to communicate with VMP in a timely manner as to the status of the exportation; (f) to select a reputable warehouse to store the goods pending Customs clearance.

99. TT conduct's conduct as alleged was negligent and rose to the level of gross negligent.

100. As a direct and proximate cause of these breaches of duty, VMP was damaged.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against TT for damages, together with prejudgment interest, costs, fees and other and further relief as this Court deems just and proper.

## COUNT VI – NEGLIGENCE - TT

101. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

102. As part of the services it provided to VMP, TT assumed the duty to obtain insurance coverage for the full invoice value of the products, plus 10%.

103. This coverage was to attach door-to-door, from the factory to final delivery.

104. TT confirmed, in writing, multiple times, that it obtained coverage for the products.

105. TT also ultimately confirmed that coverage was provided under a policy of insurance provided by CONTINENTAL.

106. CONTINENTAL, however, ultimately denied that any coverage was obtained for the subject shipment.

107. As such, such failure to obtain insurance coverage constitutes a breach of the duty owed to VMP.

108. TT conduct's conduct as alleged was negligent and rose to the level of gross negligent.

109. As a direct and proximate result of such breach, VMP suffered damages.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against TT for damages, together with prejudgment interest, costs, fees and other and further relief as this Court deems just and proper.

### COUNT VII – BREACH OF CONTRACT - TT

110. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

111. Alternatively, as part of the services it provided to VMP, TT agreed to obtain insurance coverage for the full invoice value of the products, plus 10%.

112. This coverage was to attach door-to-door, from the factory to final delivery.

113. TT confirmed, in writing, multiple times, that it obtained coverage for the products.

114. TT also ultimately confirmed that coverage was provided under a policy of insurance provided by CONTINENTAL.

115. CONTINENTAL, however, ultimately denied that any coverage was obtained for the subject shipment.

116. As such, such failure to obtain insurance coverage constitutes a breach of the parties' agreement to procure insurance for the products.

117. As a direct and proximate result of such breach, VMP suffered damages.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against TT for damages, together with prejudgment interest, costs, fees and other and further relief as this Court deems just and proper.

### COUNT VIII – FRAUDULENT MISREPRESENTATION - TT

118. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

119. On April 14, 2020, TT represented to VMP that the products were covered by insurance, door-to-door, for the full invoice value of the products, plus 10%. TT confirmed this in writing again on April 17, 2020.

120. TT also ultimately confirmed that coverage was provided under a policy of insurance provided by CONTINENTAL.

121. At the time the statements were made, TT knew that they were false.

122. TT made these representations to VMP with the intention that VMP would believe the representations and rely upon them in continuing to utilize TT for the transport.

123. VMP relied upon the representations to its detriment, as it appears that no insurance was ever obtained.

124. As a result of the misrepresentations, VMP continued to use TT for the transportation and did not seek to obtain insurance from any other source.

125. Tellingly, following the loss, TT refused to provide to VMP any information regarding the insurance or the claim and refused to provide the policy.

126. Thereafter, TT attempted to conceal its attempts to mislead VMP by undermining the insurance claim.

127. As a direct and proximate result of such misrepresentations, VMP was injured.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against TT for damages, together with prejudgment interest, costs, fees and other and further relief as this Court deems just and proper.

### COUNT IX– UNFAIR AND DECEPTIVE TRADE PRACTICE
### FLA. STAT § 501.202 et seq - TT

128. VMP reasserts and realleges the allegations set forth in paragraphs 1 through 53.

129. On April 14, 2020, TT represented to VMP that the products were covered by insurance, door-to-door, for the full invoice value of the products, plus 10%. TT confirmed this in writing again on April 17, 2020.

130. TT also ultimately confirmed that coverage was provided under a policy of insurance provided by CONTINENTAL.

131. At the time the statements were made, TT knew that they were false.

132. TT made these representations to VMP with the intention that VMP would believe the representations and rely upon them in continuing to utilize TT for the transport.

133. VMP relied upon the representations to its detriment, as it appears that no insurance was ever obtained.

134. Further, TT refused to provide to VMP any information regarding the insurance or the claim and refused to provide the policy.

135. Thereafter, TT attempted to conceal its attempts to mislead VMP by undermining the insurance claim.

136. As a result of the misrepresentations, VMP continued to use TT for the transportation and did not seek to obtain insurance from any other source.

137. Such acts and actions by TT constitute unfair and/or deceptive trade practices under Florida law.

138. As a direct and proximate result of such misrepresentations, VMP was injured.

139. Under Florida Statute § 501.202, VMP is entitled to damages and an award of attorney's fees as a result of TT's deceptive and unfair conduct.

**WHEREFORE,** for all of the reasons stated herein, Plaintiff demands judgment in its favor and over and against TT for damages, together with prejudgment interest, costs, fees and other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury on all issues allowed pursuant to Fed. R. Civ. P. 38.

Dated:  Miami, Florida
        November 24, 2020

>Respectfully submitted,
>
>SPECTOR RUBIN, P.A.
>*Attorneys for Defendants*
>3250 Mary Street
>Suite 405
>Miami, Florida 33133
>Tel: 305.537.2000
>Fax: 305.537.2001
>Email: Robert.Borak@spectorrubin.com
>
>By: /s/ Robert Borak_____
>Robert M. Borak (FBN 015923)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on November 24, 2020 via the Court's CM/ECF system, which shall notify electronically all parties of record in this matter currently on the list to receive e-mail notices for this case.

>By: */s/ Robert Borak*_____
>Robert M. Borak (FBN 015923)